**UNITED STATES of America, Plaintiff,**

v.

**Zenon HERNANDEZ, Defendant.**

**Crim. A. No. 88–10068–01.**

United States District Court, D. Kansas.

May 15, 1989.

Assistant U.S. Atty. Kim Martin, Wichita, Kan., for plaintiff.

Assistant Public Defender, Marilyn M. Trubey, Topeka, Kan., for defendant.

## OPINION AND ORDER

THEIS, District Judge.

Defendant was charged by indictment with two counts: I, making a false statement to obtain a firearm by representing that he was not illegally or unlawfully in the United States, a violation of 18 U.S.C. § 922(a)(6); II, unlawful receipt of a firearm by an illegal alien, a violation of 18 U.S.C. § 922(g)(5). An element common to both counts and the key element at trial was whether defendant was an illegal alien. A short time before trial commenced the court denied defendant's motion in limine to prevent the government from introducing proof of defendant's *application* for amnesty under the Special Agricultural Workers provision of the Immigration Reform Act. Immigration Reform and Control Act of 1986 § 302 (hereinafter the Act), 8 U.S.C. § 1160 (1986). The government sought to use the fact defendant applied

for amnesty to corroborate defendant's admission to a state trooper and a Immigration and Naturalization Service agent that he was an illegal alien. The court now more elaborates on the oral reasons given for denying defendant's motion.

Defendant's opposition to the introduction of the fact of his application for amnesty is based on a statutory confidentiality provision of the Act. The Act has amnesty provisions for two types of illegal aliens: those residing in the United States before 1982 and special agricultural workers. § 201 of the Act, 8 U.S.C. § 1255a; § 302 of the Act, 8 U.S.C. § 1160. Both amnesty provisions have identical confidentiality provisions. § 201(a)(c)(4), (5) of the Act, 8 U.S.C. § 1255a(c)(4), (5); § 302(a)(b)(5), (6) of the Act, 8 U.S.C. § 1160(b)(5), (6). The sections provide:

LIMITATION ON ACCESS TO *INFORMATION.*—Files and records prepared for purposes of this section by designated entities operating under this section are confidential and the Attorney General and the Service shall not have access to such files or records relating to an alien without the consent of the alien.

CONFIDENTIALITY OF *INFORMATION.*—Neither the Attorney General, nor any other official or employee of the Department of Justice, or bureau or agency thereof, may

(A) use the *information furnished* pursuant to an application filed under this section for any purpose other than to make a determination on the application or for enforcement of paragraph ( [c]6 or [b]7) [Penalties for making a false statement on the amnesty application],

(B) make any publication whereby the *information furnished* by any particular individual can be identified, or

(C) permit anyone other than the sworn officers or employees of the Department or bureau or agency or with respect to applications filed with a designated entity, that designated entity, to examine individual applications.

Anyone who uses, publishes or permits *information* to be examined in violation of this paragraph shall be fined in accordance with title 18, United States Code, or imprisoned not more than five years, or both.

*Id.* (emphasis added).

In interpreting the confidentiality provision, the parties do not dispute that the Assistant United States Attorney is an agent of the Attorney General and the Department of Justice. The disputed ambit of the confidentiality statute is if it applies to the very making of an amnesty application. The government argues from the statutes' numerous references to "information" and "information furnished" that the data contained within the application is the material prohibited from examination or use by the Attorney General's agent. Defendant counters that the statutory prohibition is broader and must include *any* reference to an application for amnesty.

A plain reading of the statute supports the government's contention. Both titles of each subparagraph limit the use of "information." Particularly, the "information" to be kept "confidential" is "the information furnished pursuant to an application" and the "information furnished by any particular individual...." 8 U.S.C. §§ 1160(b)(6)(A), (B), 1255a(c)(5)(A), (B). The court does not find the occurrence of filling out an application within these phrases. The quoted portions are directed at the heart of an application: an applicant's residence, work history, current employment, etc. Neither the court nor the parties have found any cases construing this passage. On this blank slate, the court rules a careful reading of the statute cannot support the broader construction urged by defendant. The construction urged by the government also conforms to the workings of other provisions of the statute. In at least two places, the Act requires other branches of the federal government or a part of a state government to verify a person's immigration status. The court determines that Congress' desire to make the fact of application available to such a broad group of parties, including employers, state governments and

**1142**

other federal agencies, evinces an intent to *not* make the fact of application fall within the confidentiality provisions. Defendant's interpretation of the confidentiality provisions is at odds with other sections of the Act. The court must read a statutory provision within the larger context of the entire statute. *Shell Oil Co. v. Iowa Department of Revenue,* — U.S. —, 109 S.Ct. 278, 281–82, 102 L.Ed.2d 186 (1988).

As alluded to above, two provisions of the Act allow parties access to the fact of an alien's amnesty application. First in regards to the special agricultural workers amnesty program, an alien with an application for amnesty on file can prevent deportation pending the outcome of his application and can receive a temporary work permit. § 302(a)(d)(2) of the Act, 8 U.S.C. § 1160(d)(2). Second, state and federal officials scrutinizing the applications of aliens' applications for welfare, housing and educational benefits must verify the applicant's legal immigration status. § 121(a) of the Act; 42 U.S.C. § 1320b–7(d), (e), 42 U.S.C. § 1436a(d), (e), 20 U.S.C. § 1091(c), (d). To implement these provisions, a list of those who have applied must be compiled and be available for verification. By applying for amnesty, the Act gives illegal aliens significant rights and creates the need for ready access to a list of those with timely applications on file. The disclosure of who has filed, and nothing more, is an integral part of the Act. In light of these mandatory disclosures under the Act, the court is reassured that its construction of the statute is sound.

Defendant sought to bolster its broad reading of the confidentiality provisions by assuming a general purpose of those subsections was to encourage illegal aliens to apply for amnesty. A thorough reading of the legislative history by the court reveals some support for defendant's assertion on the purpose of the provisions. The only direct reference to the purpose of these subsections states: "The confidentiality of the records is meant to assure applicants that the legalization process is serious, and not a ruse to invite undocumented aliens to come forward only to be snared by the INS." H.Rep. No. 682(I), 99th Cong., 2d

Sess. 73, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5649, 5677. Several other references repeat the obvious point that the subsections at issue are meant to promote confidentiality of information. *Id.* H.Rep. at 95 & 99, 1986 U.S.Cong.News at 5699 & 5703.

These few references of legislative intent do not mandate a different conclusion on the scope of the confidentiality provisions. Legislative history is a secondary source of congressional intent and is not a substitute for the language of the statute. *Boureslan v. Aramco,* 857 F.2d 1014, 1018 (5th Cir.1988). The latter two references are so general that they are of little value. The sentence quoted above repeats the emphasis in the two subsections that "the records" or the "information furnished" is to be kept confidential. Moreover, the stated purpose of the subsections to promote amnesty applications is not violated by allowing the government to use the fact of application in a limited manner.

IT IS BY THE COURT THEREFORE ORDERED that Defendant's motion, Dkt. no. 22, is denied.